# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

DAVID THOMAS JONES,  )
      Petitioner,  )
        )
v.  )  Case No. CV410-039
        )
DANNIE THOMPSON,  )
      Respondent.  )

## REPORT AND RECOMMENDATION

A Georgia state court jury convicted David Thomas Jones of malice murder and possession of a firearm by a convicted felon. He unsuccessfully appealed, *Jones v. State*, 285 Ga. 328 (2009), then sought no state habeas relief. Instead, he has petitioned this Court for 28 U.S.C. § 2254 federal habeas relief. Doc. 1. The state argues that his petition should be denied, doc. 8, and this Court agrees.

## I. BACKGROUND

The trial evidence adduced against Jones shows that he

> rented a room in the victim's trailer and that the two argued regularly over the high volume at which the nearly-deaf victim set [Jones's] television and stereo. [Jones], while voluntarily intoxicated, fatally shot the victim in the chest with the victim's .22 caliber rifle. He then went next door, admitted to the neighbor he

had shot the victim in the chest, told her she needed to call 911 and then gave the neighbor his wallet and his wife's phone number with directions to contact his wife. [Jones] told the responding police officer that "I shot him"; stated that "I did what needed to be done" as he was being transported to the police station; and, while smoking cigarettes outside the police station with detectives, indicated on his chest where he shot the victim and said, inter alia, that the victim "deserved what happened to him."

[Jones] testified at trial that he was a convicted felon; that he fired the victim's rifle the first time at his stereo because the volume was set so high; that, as the victim then came into the room, [Jones] "turned around like this, and I was going to, you know, put [the gun] on the bar" and "the gun apparently went off"; and that he did not intend to hit the victim.

*Jones*, 285 Ga. at 328-29.

Before the Georgia Supreme Court Jones argued that the trial court erred by denying his motion to suppress his statements to police officers. *Id.* at 329. That court rejected the claim, as Jones had "admitted shooting the victim in a statement he volunteered to the responding police officer. *See generally State v. Davison*, 280 Ga. 84(2), 623 S.E.2d 500 (2005) (voluntary statements not made in response to custodial interrogation admissible at trial)." *Id.* And his "remaining statements were made after the responding officer had read [him] his *Miranda* rights and obtained [his] verbal affirmation that he understood

2

the rights and wanted to talk." *Id.* The trial court had conducted a *Jackson-Denno* hearing[1] and considered Jones's claim -- raised before the state supreme court and now this Court -- that he was too intoxicated to have voluntarily waived his *Miranda* rights. The *Jones* court concluded:

> The mere fact that [Jones] was intoxicated at the time of the statements does not automatically render them inadmissible. *Mullis v. State*, 248 Ga. 338, 340-341(9), 282 S.E.2d 334 (1981). There was nothing to indicate that [Jones's] statements, even if made while he was intoxicated, were not the product of rational intellect and free will. Based on our careful review of the evidence before the trial court, we find that the trial judge was authorized to find that [Jones] was rational and coherent and that his statements were given knowingly and voluntarily.

*Id.* at 329-30. That court also rejected Jones's argument that the evidence warranted a lesser-charge (involuntary manslaughter) instruction, as the evidence did not reflect that his use of the gun amounted to mere reckless conduct or another misdemeanor. *Id.* at 258.

Here, Jones complains in Ground One that his conviction was

---

[1] *Jackson v. Denno*, 378 U.S. 368 (1964), addresses voluntariness:

It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, and even though there is ample evidence aside from the confession to support the conviction.

378 U.S. at 376 (internal citation omitted).

obtained on the basis of statements made to police officers "in violation of the *Miranda* warning and associated rights." Doc. 1 at 5. More specifically, the state courts erred in admitting those statements at trial because police elicited them from him when he was "severely intoxicated" and after they had "placed him in an environment . . . which they 'knew' he would make incriminatory statements." *Id.*

In Ground Two, he insists the trial court also should have excluded statements he "allegedly made to [a police detective] in an unrecorded conversation . . . that took place at least a few hours after transporting [Jones] to the police barracks; the police failed to [re-recite to him his] *Miranda* rights upon [his] removal an hour after [Jones's] arrival from inside to outside the station; [it was a] non-continuous interrogation/interview." *Id.*

Finally, in Ground Three Jones contends that his "conviction was obtained on the basis of a trial in which Petitioner was denied fundamental fairness; thus, Due Process, by denial of a jury instruction on [a] lesser offense." *Id.* He contends that since there was evidence that he unintentionally killed his victim, he was entitled to an

involuntary manslaughter jury instruction. *Id.*

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") placed "a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bell v. Cone*, 535 U.S. 685, 693 (2002) (AEDPA was intended "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."); *Peterka v. McNeil*, 532 F.3d 1199, 1200-01 (11th Cir. 2008) (under AEDPA a federal court's review of a state court ruling is "greatly circumscribed and highly deferential to the state courts") (citation omitted); *Trotter v. Sec'y, Dep't of Corr.*, 535 F.3d 1286, 1290 (11th Cir. 2008) (AEDPA limits a federal court's review of a state court's decisions "and establishes a general framework of substantial deference for reviewing every issue that the state courts have decided.") (cites omitted). These restrictions on federal habeas review are set forth in 28 U.S.C. § 2254(d), which provides that a federal court may grant a writ of

habeas corpus for a claim adjudicated on the merits in state court only if the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Thaler v. Haynes*, ___ U.S. ___, 130 S. Ct. 1171, 1173-74 (2010).

The "threshold question" under § 2254(d)(1) is whether the habeas petitioner is seeking to apply a rule of law that was clearly established at the time his state court conviction became final. *Williams*, 529 U.S. at 390. Since the statute expressly provides that only pronouncements "by the Supreme Court of the United States" qualify as "clearly established Federal law," 28 U.S.C. § 2254(d)(1), a federal habeas court may not look to the "the case law of the lower federal courts" in determining what federal law is "clearly established." *Putnam v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001); *see also Thaler*, 130 S. Ct. at 1175 (reversing federal appeals court's judgment because "no decision of this Court

clearly establishes the categorical rule on which [that court] appears to have relied"); *Renico v. Lett*, ___ U.S. ___, 130 S. Ct. 1855, 1864 (2010) (Michigan Supreme Court's failure to apply *Sixth Circuit* precedent was not an independent basis for granting habeas relief). Further, the statute "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. These "holdings -- the exclusive touchstone for clearly established federal law -- must be construed narrowly and consist only of something akin to on-point holdings." *House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008).

So unless a prior Supreme Court decision "squarely addresses" the issue presented in the habeas case, *Wright v. Van Patten*, 552 U.S. 120, 125 (2008), or establishes a legal principle that "clearly extend[s]" to the conduct at issue in that case, it cannot be said that the law is clearly established under AEDPA. *Id.* at 123; *Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009); *House*, 527 F.3d at 1018 ("The absence of clearly established federal law is dispositive under § 2254(d)(1)."). Thus, "federal courts may no longer extract clearly established law from the

general legal principles developed in factually distinct contexts." *House*, 527 F.3d at 1017. And, if the federal habeas court makes a threshold determination that the law was not clearly established at the time the state court issued its decision, then that finding is dispositive in the § 2254(d)(1) analysis, and there is no need for the Court to assess whether the state court's decision conflicts with controlling United States Supreme Court authority. *Id.*

But where the Supreme Court has decided the issue addressed by the state court, the federal habeas court must determine whether the state court's decision is "contrary to" or involves an "unreasonable application" of the controlling precedent. These § 2254(d)(1) clauses have independent meaning and furnish separate bases for reviewing a state court's decisions. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 404-05; *Putnam*, 268 F.3d at 1241 (11th Cir. 2001). A state court decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06,

412-13. In contrast, a state court decision involves an "unreasonable application" of clearly established federal law where it correctly identifies the governing legal rule from the Supreme Court's cases but applies it *unreasonably* to the facts of the particular prisoner's case. *Id.* at 407-08, 413.

Thus, "[a] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Instead, the state court's application of Supreme Court precedent must be "objectively unreasonable." *Id.* at 409; *Bell*, 535 U.S. at 694; *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001). That presents "a substantially higher threshold" than the pre-AEDPA standard. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also McDaniel v. Brown*, 130 S.Ct. 665, 673 (2010). Put another way, the objectively unreasonable standard for granting federal habeas relief is a substantially higher threshold for obtaining relief than de novo review. *Renico*, 130 S. Ct. at 1862.

Federal courts also must presume state court factual findings to be

correct unless they are rebutted by the petitioner "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This statutory presumption of correctness applies to findings of fact made by both state trial and appellate courts. *Mason v. Allen*, 605 F.3d 1118, 1118-19 (11th Cir. 2010); *Dill v. Allen*, 488 F.3d 1344, 1354 (11th Cir. 2007). Such deference does not apply, however, to mixed determinations of law and fact. *Parker*, 244 F.3d at 836.

Finally, a state court's decision rejecting a constitutional claim on the merits is entitled to deference even if the decision is summary in nature and offers no discussion of the court's reasoning. *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 784 (2011) ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a 'claim,' not a component of one, has been adjudicated."); *Wright v. Moore*, 278 F.3d 1245, 1253-54 (11th Cir. 2002) (two-sentence opinion affirming defendant's conviction constituted a

rejection of his claim on the merits so as to warrant deference); *Parker*, 331 F.3d at 776 ("the summary nature of [the] decision does not lessen the deference that it is due"). And, of course, "federal habeas corpus relief does not lie for errors of state law." *Swarthout v. Cooke*, ___ U.S. ___, 131 S. Ct. 859, 861 (2011) (quotes and cite omitted); *see also id.* at 863 ("a mere error of state law is not a denial of due process.") (quotes and cite omitted).

### III. ANALYSIS

Grounds One and Two fail. Jones is aware of 28 U.S.C. § 2254(d)(1)-(2). Indeed, he cites to it in his supporting brief. Doc. 3 at 4. He at best pays lip service to it in simply rehashing the same claims that he raised in the state courts without making any showing that those rulings were "objectively unreasonable." To that end, his petition and brief more or less acknowledge the fact that

> [v]oluntary statements "remain a proper element in law enforcement." *Miranda v. Arizona*, 384 U.S. 436, 478, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). "[F]ar from being prohibited by the Constitution, admissions of guilt by wrongdoers, if not coerced, are inherently desirable. . . . Absent some officially coerced self-accusation, the Fifth Amendment privilege is not violated by even the most damning admissions." *Oregon v. Elstad*, 470 U.S. 298, 305, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) (internal citations and

11

quotation marks omitted).

*Bruno v. McNeil*, 2010 WL 1258044 at * 4 (S.D. Fla. Mar. 30, 2010).

Jones simply disagrees with the state courts' determination that he was not so drunk as to render his statements involuntary. Mere disagreement, of course, is not enough. He must show that the state court's determination was objectively unreasonable. His citations to a police interrogation manual that encourages police to establish control, doc. 3 at 11, exploit the subject's discomfort in unfamiliar surroundings, *id.*, and use "psychological ploys," are not helpful. Doc. 3 at 9. It is not enough to in effect argue "hey, that's unfair, they tricked me!" to overcome § 2254(d)'s unreasonableness requirement.[2]

The same must be said for Jones's complaint that the police in this

---

[2] In fact, "trickiness," within reasonable limits, is *permitted*. *See, e.g., United States v. Crawford*, 372 F.3d 1048, 1060-61 (9th Cir. 2004) (trickery, deceit, even impersonation do not render a confession inadmissible, certainly in noncustodial situations and usually in custodial ones as well, unless government agents make threats or promises); *Amaya-Ruiz v. Stewart*, 121 F.3d 486, 495 (9th Cir. 1997) ("Misrepresentations linking a suspect to a crime or statements which inflate the extent of evidence against a suspect do not necessarily render a confession involuntary."); *but see* M. S. Gohara, *A Lie For A Lie: False Confessions And The Case For Reconsidering The Legality Of Deceptive Interrogation Techniques*, 33 FORDHAM URB. L.J. 791 (2006) (exploring the role deceptive police interrogation tactics played in the wrongful conviction of five men for the infamous "Central Park Jogger" attack in 1989).

case were "trained" by that manual to do things like give him cigarettes in a comfortable setting (the "police station balcony") before eliciting incriminating statements from him -- while he was still intoxicated. Doc. 3 at 9. This is just another way of raising Jones's mere disagreement with the state court's finding that he was not so intoxicated that his statements were involuntary.[3]

---

[3] Note that Jones's claim implicates both prongs of the analysis of federal habeas claims -- first, whether the state court made an unreasonable determination of the facts; and second, whether the state court made an unreasonable determination of the law. The *Jones* court reviewed the record and made a factual determination that Jones "was rational and coherent and that his statements were given knowingly and voluntarily." *Jones*, 285 Ga. at 330; *see also Krause v.* State, 286 Ga. 745, 751 (2010) (trial court was authorized to conclude that defendant knowingly and intelligently waived his *Miranda* rights and voluntarily gave the statement in question, even though there was evidence that defendant was drinking and consuming drugs in the hours leading up to his arrest and that he appeared tired and fatigued when he spoke with police, where detectives testified that defendant did not appear to be under the influence of any intoxicants, appeared to be speaking freely and voluntarily, and was responsive to all questions, and trial court reviewed a videotape of the interview).

To grant Jones relief here, then, he must point to something to enable this Court to conclude that this was an unreasonable determination of the facts. But that determination is entitled to deference under section 2254(e)(1), which requires this Court to *presume* that such findings are correct, which means that Jones must *rebut* that presumption by clear and convincing evidence. *See Hunter v. Sec'y, Dep't of Corrs.*, 395 F.3d 1196, 1200 (11th Cir. 2005); *Bruno*, 2010 WL 1258044 at * 3. Yet, he points to nothing that even comes close to that; instead, he merely *adverts* to an interrogation training manual's techniques (none of which he has shown to be unconstitutional) and the fact that the police took him to a balcony, gave him cigarettes and let him talk, etc. Nor, for that matter, does he point to anything other than his general unhappiness with the state court's application of the law -- not even a colorable showing that such application was "§ 2254(d) unreasonable."

Nor does Jones cite any law obligating the police to "renew" the *Miranda* warning they gave him merely because some time elapsed between his arrest and later questioning. And his citation to *Edwards v. Arizona*, 451 U.S. 477 (1981),[4] doc. 3 at 10, is meaningless in that he does not even allege that he unambiguously invoked his right to counsel[5] to the police and that they ignored it when questioning him.

The State says Ground Three (manslaughter instruction claim) is procedurally defaulted because Jones only challenged the trial court's rulings on direct appeal, and not whether such rendered his trial fundamentally unfair, in violation of his due process rights.[6] Doc. 8-1 at

---

[4] "Under *Miranda's* prophylactic protection of the right against compelled self-incrimination, any suspect subject to custodial interrogation has the right to have a lawyer present if he so requests, and to be advised of that right." *Montejo v. Louisiana*, ___ U.S. ___, 129 S. Ct. 2079, 2089 (2009). Pursuant to the "prophylactic protection of the Miranda right" found in *Edwards v. Arizona*, 451 U.S. 477 (1981), "once such a defendant 'has invoked his right to have counsel present,' interrogation must stop." *Id.*, 129 S. Ct. at 2089-90 (quoting *Edwards*, 451 U.S. at 484).

[5] *See Davis v. United States*, 512 U.S. 452, 459-62 (1994) (suspect must unambiguously request counsel; "Maybe I should talk to a lawyer" insufficient).

[6] A state court's ruling on a question of state law is subject to federal habeas review only for the purpose of determining whether the alleged error was so critical or important to the outcome of the trial to render the trial fundamentally unfair under the Due Process clause. *Carrizales v. Wainwright*, 699 F.2d 1053, 1053-54 (11th Cir.1983).

7-8. Jones disagrees. Doc. 14 at 3. Even if not defaulted, it nevertheless fails. In Georgia,

> [a] person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person; however, if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder.

O.C.G.A. § 16-5-2(a); *see also Wesley v. State*, 166 Ga. App. 28, 29 (1983) (trial court did not err in charging jury on lesser included offense of voluntary manslaughter, in that evidence that deceased tore down a TV antenna defendant was erecting, was extremely angry and was striking at defendant with butcher knife was sufficient to raise issue that killing may have been done in heat of sudden passion from serious provocation, the essential elements of voluntary manslaughter), cited in Molnar, GEORGIA CRIMINAL LAW - CRIMES AND PUNISHMENTS § 38-2 (*Voluntary manslaughter*) (2009). Here the *Jones* court found

> no error in the trial court's refusal to give appellant's requested charge on the offense of involuntary manslaughter. Although appellant relies on his testimony at trial, that testimony indicated

15

appellant never pointed or fired the weapon at anyone but that he merely turned to place the weapon on the bar. Because the evidence at trial did *not* reflect that appellant's use of the gun amounted to reckless conduct or another misdemeanor, a charge on involuntary manslaughter was not required. *See Brown v. State*, 277 Ga. 53(2), 586 S.E.2d 323 (2003).

*Jones*, 246 Ga. at 258 (footnote omitted) (emphasis added).

It is true that, "[i]n the trial of a murder case, if there be any evidence, however *slight*, as to whether the offense is murder or voluntary manslaughter, instruction as to the law of both offenses should be given to the jury.' *Swett v. State*, 242 Ga. 228(1), 248 S.E.2d 629 (1978)." *Wesley*, 166 Ga. App. at 29 (emphasis added); *accord Hicks v. State*, 287 Ga. 260, 262 (2010). But here Jones

> testified. . . that he fired the victim's rifle the first time at his stereo because the volume was set so high; that, as the victim then came into the room, appellant "turned around like this, and I was going to, you know, put [the gun] on the bar" and "the gun apparently went off"; and that he did not intend to hit the victim.

*Jones*, 285 Ga. at 329; *see also* doc. 14 at 3 (Jones himself *reaffirms* this, claiming his "accidental discharging of a firearm"). That testimony -- that the firing was *an accident* -- is incompatible with any claim that Jones was provoked and that he fired in the heat of passion. With no construction of the evidence to support a voluntary manslaughter

16

finding, then, the trial court properly refused a manslaughter charge. *Hicks*, 287 Ga. at 263 (no voluntary manslaughter instruction, as a lesser included crime of malice murder, where defendant assaulted the victim with a deadly weapon and then fired the fatal shots into his back as he attempted to flee -- there was no evidence of provocation before defendant fired the fatal shots).

For that matter, Georgia law prevents Jones from using intoxication to undergird a voluntary manslaughter defense and thus be entitled to a jury charge on those grounds:

> Passion will only mitigate when there has been "some actual assault upon the person killing, or an attempt by the person killed to commit a serious personal injury on the person killing, or other equivalent circumstances to justify the excitement of passion, and to exclude all ideas of deliberation or malice, either express or implied." Code, § 4325. Simply to prove that a man was drunk, and killed another in passion, would not reduce the crime from murder to manslaughter. *Vann v. State*, 83 Ga. 44, 53, 9 S.E. 945, 948.

*Allen v. State*, 187 Ga. 178, 181 (1938) (quotes omitted);[7] *see also Mangold v. State*, 253 Ga. App. 369, 372 (2002) ("alcoholism is not a defense to a crime."); CRIMINAL OFFENSES AND DEFENSES IN GEORGIA,

---

[7] While later criticized on other grounds, *Billingsley v. State*, 193 Ga. 711, 716 (Ga. 1942), *Allen* has never been overruled.

H26 n. 528 ("It has been held, however, that passion arising from intoxication is never enough. *Allen v. State*, 187 Ga. 178, 200 S.E. 109 (1938).").

The state court's ruling is thus not clearly unreasonable. In fact, Jones does not even hint at how its straightforward application of state law rendered his trial fundamentally unfair, much less violated his due process rights. Instead, he merely repeats the "fundamental fairness and due process" phrase in his filings (doc. 14 at 3) and in effect seeks to rewrite state law (i.e., because he testified that his gun shot off accidentally, this must be believed *and* it therefore supports the voluntary manslaughter instruction). Under the standards illuminated above, that argument fails. Ground Three, then, affords no basis for habeas relief.

## IV. CONCLUSION

Accordingly, David Thomas Jones's § 2254 petition must be **DENIED**. Doc. 1. Applying the Certificate of Appealability ("COA") standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009) (unpublished), the Court discerns no COA-worthy

18

issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving sua sponte denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, in forma pauperis status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this  11th  day of April, 2011.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA